UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>)<br>v.                                              )<br>)<br>RAHSHJEEM BENSON,            )<br>)<br>          DEFENDANT     ) | CRIM. NO. 2:19-CR-122-DBH-01 |

**DECISION AND ORDER ON DEFENDANT'S MOTION TO WITHDRAW PLEA**

The defendant Rahshjeem Benson wants to withdraw his guilty plea. He says that evidence came to light after his plea that casts doubt on a key government witness's character for truthfulness. He argues that this evidence offers him a new defense and constitutes a "fair and just reason" for allowing him to withdraw his plea pursuant to Federal Rule of Criminal Procedure 11(d)(2)(B). However, he has not retracted his admission at the plea hearing that he is, in fact, guilty of the charged offenses. And even if the government had possessed the new evidence before the plea hearing (it did not), the defendant would not have been entitled to it at that time. For the reasons described below, I **DENY** the defendant's motion to withdraw his plea. Since my decision would be the same if all the facts were as the defendant claims them to be, I also **DENY** his motion for an evidentiary hearing.

**PROCEDURAL HISTORY**

Rahshjeem Benson and a co-defendant were indicted in June 2019 on three counts related to a scheme to apply for bank loans using personally

identifying information belonging to other people. Indictment at 1-2 (ECF No. 3). The government filed a superseding indictment against Benson and his co-defendant on October 24, 2019, adding two more charges. See Superseding Indictment (ECF No. 64). A week later (and two weeks before trial was scheduled to start), Benson pleaded guilty to four of the charges; the government agreed to drop the remaining count. Minute entry for plea hearing (ECF No. 86); Plea agreement (ECF No. 85).

Days before it filed the Superseding Indictment, the government provided Benson with material that included a letter from a key government witness to the witness's attorney. Mot. to Withdraw Plea ¶¶ 10-12 (ECF No. 122). In it, the witness alleged that while they were both on a jail transport van in September, Benson threatened the witness with violence if the witness provided information against him. Id. ¶ 12. Benson requested audio and video recordings from the van, but they apparently had been destroyed. Id. ¶ 13. He says he pleaded guilty to the Superseding Indictment "[b]ased in part on the potentially inflammatory 'evidence' from [the witness] and in part on the far more serious charges flowing from the superseding indictment." Id. ¶ 14. The Presentence Report applied a two-level enhancement for obstruction of justice and omitted the three-point reduction for acceptance of responsibility on account of the van incident. Rev. PSR ¶¶ 12, 22, 25, 26. Benson denied making any threat, and his lawyer then took steps to investigate further. At the presentence conference on February 5, 2020, I learned that interviews of the Sheriff's deputies who were in the van with Benson and the witness were scheduled for the next day.

The prosecutor, defense attorney, and an investigator interviewed the two deputies. Mot. ¶ 16. Neither deputy remembered hearing or seeing any threat—although, given the barriers built into the van and the noise of the vehicle, it is not clear whether they could have. Id. at 7-8 (quoting excerpts of interview summaries). Benson has characterized the interviews as "plainly exculpatory" concerning the alleged threat, id. at 7, and "totally contradict[ing]" the witness's letter to the witness's attorney, Def.'s Sent. Mem. at 5 (ECF No. 111), whereas the government says they were "inconclusive," Gov't's Opp'n at 6 (ECF No. 125). In any event, following the interviews, the government withdrew its support for adding the obstruction enhancement and proposed restoring the acceptance reduction. Gov't's Sent. Mem. at 2-3 (ECF No. 112).

Benson has not yet been sentenced.[1] On April 30, he filed this motion to withdraw his guilty plea. He argues that the interviews with the Sheriff's deputies "could cast serious doubt on the credibility of the government's main witness," and thereby offer him a defense he did not have at the time of his plea. Mot. at 6; see also Reply at 2 (ECF No. 126) ("There is no way that Mr. Benson would have pleaded guilty on October 31, 2019 had he known—as the government knew or should have known at this time—that [the witness] fabricated information about him in September 2019."). The government resists the motion, arguing that newly available attacks on a witness's credibility are

---

[1] Sentencing was scheduled for May 27 (ECF No. 118), but the hearing was cancelled due to the ongoing coronavirus emergency. Notice of cancelled hearing (ECF No. 123); see also D. Me. General Order 2020-5. A new hearing date has not yet been set.

not sufficient grounds for withdrawing a guilty plea and that Benson has not claimed that his plea was involuntary or that he is innocent. Opp'n at 9-12.

## ANALYSIS

Benson brings his motion under Federal Rule of Criminal Procedure 11(d)(2)(B). The rule permits a defendant to withdraw a guilty plea "after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B).

The First Circuit explains that "[a] defendant has no absolute right to take back his guilty plea before sentencing. Instead, he must persuade the trial court that there's a 'fair and just reason.'" United States v. Gonzalez-Arias, 946 F.3d 17, 28 (1st Cir. 2019). I must consider several factors. "Most critical[ ]" is whether the plea was "voluntary, knowing, and intelligent." Id. "The other factors are the defendant's reasons for withdrawal; the timing of the request; whether he credibly claims innocence; and whether unwinding the plea would be unfair to the government." Id.; see also United States v. Flete-Garcia, 925 F.3d 17, 24 (1st Cir. 2019) ("A court's scrutiny of a plea-withdrawal motion must take into account the totality of the relevant circumstances. This canvass includes consideration of whether the plea was voluntary, intelligent, and knowing when tendered; the strength of the reason(s) proffered in support of the motion to withdraw; the timing of the request; and the force of any claim of actual innocence."). Analyzing those factors demonstrates that Benson has not shown a "fair and just reason" for withdrawing his plea.

*Voluntary, Knowing, and Intelligent*

The First Circuit has said the "voluntary, knowing, and intelligent" requirements constitute the "core concerns" of Rule 11 and "are 'the most important factors to consider' on a motion for plea withdrawal." Gonzalez-Arias, 946 F.3d at 28 (quoting United States v. Isom, 580 F.3d 43, 52 (1st Cir. 2009)). The record shows that Benson's plea here was "voluntary, knowing, and intelligent."

At the plea hearing, I adhered to the requirements of Rule 11(b), including ensuring that Benson understood the charges against him and their potential penalties, Hr'g Tr. at 4:24-8:9 (ECF No. 124), that he was aware of his trial rights and knew he would give up those rights by pleading guilty, id. at 10:7-12:1, and that there was a factual basis for his guilty plea, id. at 13:10-20. "Strict compliance with Rule 11 is quite often dispositive in determining whether a defendant has knowingly and voluntarily entered a guilty plea." United States v. Austin, 948 F.2d 783, 787 (1st Cir. 1991). Benson does not argue that he misunderstood or mistakenly entered his plea, and he admits "[t]here is no question" that he "was not pressured into pleading guilty." Reply at 1.

In short, Benson's guilty plea was voluntary, knowing, and intelligent.

*Reasons for Withdrawal*

The central claim of Benson's motion—the new evidence concerning the government witness's character for truthfulness—fits under the next factor, the "defendant's reasons for withdrawal." Benson argues that because he now has impeachment material calling the witness's truthfulness into question, evidence

he did not have when he pleaded guilty, he should essentially get a do-over and be permitted to go to trial.

Benson points to no evidence that, at the time he pleaded guilty, the government possessed any information undermining the witness's credibility that it did not turn over to Benson. Benson argues that the government, before his guilty plea, should have "confirm[ed] the veracity of [the witness]'s allegations with the [Sheriff's] deputies rather than simply taking [the witness] (a convicted felon) at [the witness's] word." Mot. at 6-7; see also Reply at 2 (claiming the government "should have known" before his guilty plea that the witness "fabricated information"). He advances no authority for that proposition. Moreover, a defendant is not entitled to witness impeachment material at the pleading stage. United States v. Ruiz, 536 U.S. 622, 629 (2002) ("We must decide whether the Constitution requires . . . preguilty plea disclosure of impeachment information. We conclude that it does not."). A court may "accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor," including when the defendant "misapprehended the quality of the State's case." Id. at 630 (quoting Brady v. United States, 397 U.S. 742, 757 (1970)). The First Circuit has explained that "the right memorialized in Brady [v. Maryland, 373 U.S. 83 (1963) concerning disclosure of information by the government] is a trial right . . . . Ruiz teaches that Brady does not protect against the possible prejudice that may ensue from the loss of an opportunity to plea-bargain with complete knowledge of all relevant facts. This makes good sense: when a defendant chooses to admit his guilt, Brady concerns subside." United States v.

6

Mathur, 624 F.3d 498, 507 (1st Cir. 2010). When Benson pleaded guilty, he was foregoing his trial rights, including the right to see impeachment material. In other words, he was giving up his chance to test the strength of the government's case. The fact that he later discovered information he might have used at trial[2] does not constitute a good reason for withdrawing his guilty plea.

*Timing*

"The timing of a motion to withdraw a guilty plea is important . . . because it is 'highly probative of motive.'" United States v. Fernández-Santos, 856 F.3d 10, 18 (1st Cir. 2017) (quoting United States v. Doyle, 981 F.2d 591, 595 (1st Cir. 1992)); see also id. ("While an immediate change of heart may well lend considerable force to a plea withdrawal request, a long interval between the plea and the request often weakens any claim that the plea was entered in confusion or under false pretenses."). The First Circuit has "previously found a delay of only thirteen days weakened a defendant's motion to withdraw a guilty plea." Id. "The rule of thumb is that the longer a defendant waits before moving to withdraw his plea, the more potency his motion must have in order to gain

---

[2] Benson argues "that a jury would consider such information proffered from two law enforcement officers as compelling exculpatory evidence, *i.e.*, fabricated information about a co-defendant as [that person] met with the government as a cooperating witness." Mot. at 9. I doubt Benson could have introduced at trial the interviews with the deputies, as these appear to constitute prohibited "extrinsic evidence" offered "to prove specific instances of a witness's conduct in order to attack . . . the witness's character for truthfulness." Fed. R. Evid. 608(b); see also United States v. Tse, 375 F.3d 148, 166-67 (1st Cir. 2004) (affirming district court's decision to allow the defendant to question a prosecution witness about allegedly false statements he made on an employment application—because those questions went to the witness's character for truthfulness—while refusing to allow the defendant to refresh the witness's memory with the application itself, which was extrinsic evidence prohibited by Rule 608(b)). Although Benson might have been able to cross-examine the witness over whether the witness falsely accused him of a threat, that would have been a dubious strategy since the witness would be free to reiterate that the threat occurred, and Benson would not be able to introduce the Sheriff's deputies' interviews to contradict the testimony.

7

favorable consideration." United States v. Parrilla-Tirado, 22 F.3d 368, 373 (1st Cir. 1994).

Here, Benson waited nearly three months after learning of the new evidence and six months after pleading guilty before filing his motion to withdraw his guilty plea. Instead of immediately filing this motion, his first effort was to find a way to discredit the government witness so as to avoid the obstruction of justice enhancement and the loss of acceptance of responsibility in the Guideline calculations. On that effort, he was successful. Only after he saw the severity of the government's sentencing recommendation did he move to withdraw his guilty plea. That delay (and sequence) would normally be long enough to weaken his motion. But he explains that some of that delay was caused by "many discussions" with the government about the consequences of the deputy interviews. Reply at 3. And he cites the ongoing coronavirus emergency, which began disrupting activities in mid-March. Although his explanations for the timing are doubtful, the current pandemic has upended all calculations. Under the circumstances, I choose not to make his delay a factor in my ruling.

***Credible Claim of Innocence***

"A defendant must put forward 'factual contentions' that create a 'legally cognizable defense to the charges, otherwise he has not effectively denied his culpability,' and the district court may deny the motion to withdraw." Fernández-Santos, 856 F.3d at 19 (quoting United States v. Ramos, 810 F.2d 308, 312 (1st Cir. 1987)). Here, Benson has not claimed that he is innocent. Instead, he argues that the new evidence about the government witness's "credibility unquestionably raises a 'legally cognizable defense' and the

government may not be able to meet its burden to prove beyond a reasonable doubt that Mr. Benson is guilty of the charged crimes. This is tantamount to a 'colorable assertion of legal innocence.'" Reply at 5. I disagree.

At the plea hearing, Benson pleaded guilty to four crimes and confirmed that he "actually committed those crimes." Hr'g Tr. at 9:22-24 (ECF No. 124); see also id. at 13:10-15 (stating there was nothing in the Prosecution Version (ECF No. 84) that he disagreed with and it was all true to his knowledge). Benson's motion does not refute his earlier admission that he is in fact guilty of those crimes. In his interview with the Probation Officer, as he sought a three-level reduction for acceptance of responsibility, he "re-affirmed the prosecution version filed in this case and expressed remorse for his actions." Rev. PSR ¶ 13.

Instead, Benson argues that the new information puts the key witness's credibility in doubt and that, if his plea is withdrawn, "credibility will be front and center throughout the trial" because "the government's case hinges on [the witness]'s ability to link Benson and [his co-defendant] with the other evidence." Mot. at 5. This argument mirrors the claim in United States v. Merritt, where the defendant said that new evidence of a key witness's lack of credibility gave him a defense that was not available at the time of his plea, so it should entitle him to withdraw the plea. 755 F.3d 6, 10-11 (1st Cir. 2014) (new evidence showed that chemist who tested defendant's purported drugs had committed a pattern of fraud in other cases). The First Circuit dismissed this argument, noting that the defendant did not point to any evidence that affirmatively supported his new theory that the drugs he was charged with were counterfeit,

9

and (most importantly) that the defendant "never retreated" from his admission at the plea hearing that he was, in fact, guilty. Id. at 11. The same is true here.

### *Prejudice to the Government*

The last factor comes into play only if "the defendant makes a prima facie showing of an entitlement to relief." United States v. Flete-Garcia, 925 F.3d 17, 24 (1st Cir. 2019); see also Merritt, 755 F.3d at 9 ("If the court concludes that the balance of all the relevant factors tilts in favor of the defendant, then—and only then—should the court proceed to factor in the prejudice (if any) that the government would suffer were the court to allow the motion to withdraw."). Since Benson has not made a prima facie showing, I do not assess prejudice.

### *Evidentiary Hearing*

Benson has requested an evidentiary hearing, but no hearing is necessary in this case. "In connection with an attempted plea retraction, a district court is required to grant a motion for an evidentiary hearing only if, at a bare minimum, the defendant alleges facts which, if taken as true, would entitle him to relief." United States v. Chambers, 710 F.3d 23, 30 (1st Cir. 2013); see also United States v. Pulido, 566 F.3d 52, 57 (1st Cir. 2009) ("[A]n evidentiary hearing on a motion to withdraw a guilty plea is required when a defendant alleges facts which, if taken as true, would entitle him to relief."). Here, even if Benson's assertions are true—that the witness lied about Benson making a threat, casting doubt on the witness's credibility—that would not be enough to allow Benson to withdraw his plea.

10

**CONCLUSION**

I congratulate defense counsel on serving his client well by pursuing the question of what happened in the prison van and thereby reducing the government's position on the defendant's total offense level by five. That has a major effect on the Sentencing Guideline range. I also understand that Benson and his lawyer are surprised and disappointed by the severity of the government's requested sentence. I have not yet determined what the sentence will be and will not do so until the sentencing hearing. But Benson's original guilty plea was "voluntary, knowing, and intelligent." And Benson has not retracted his admission that he is guilty of the charges. Under these circumstances, the discovery of new impeachment material is not enough to constitute a "fair and just reason" for withdrawing his guilty plea. For these reasons, I **DENY** the defendant's motion and **DENY** his request for an evidentiary hearing.

**SO ORDERED.**

**DATED THIS 26TH DAY OF MAY, 2020**

/S/ D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**